IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| McMASTER-CARR SUPPLY COMPANY,<br><br>Plaintiff<br><br>v.<br><br>CHARLES ROCKWELL McCRADY and McCRADY MASTER REFERENCE, INC.,<br><br>Defendants. | Civil Action No. |

## COMPLAINT

Plaintiff McMaster-Carr Supply Company ("McMaster-Carr") complains against defendants Charles Rockwell McCrady ("McCrady") and McCrady Master Reference, Inc. ("McCrady Master Reference") as follows:

### Nature of the Action

1. McMaster-Carr is a leading distributor of industrial supply products. McMaster-Carr sells hundreds of thousands of different industrial supply products, through its catalogs, website, and mobile applications. McMaster-Carr does not publicly disclose the sources of the vast majority of the products that it sells, and instead protects the identities of its suppliers as valuable confidential and trade secret information.

2. The defendants offer and sell access to a database, called McCrady Master Reference, that purports to identify the sources (which are not publicly disclosed by McMaster-Carr) of hundreds of thousands of products that McMaster-Carr sells. The defendants have obtained information about the suppliers of certain McMaster-Carr products through fraud and false pretenses, and thereby also are liable for trade secret misappropriation and unjust

enrichment. Without authorization from McMaster-Carr, the defendants also have obtained product information and copyrighted material from McMaster-Carr's website and reproduced that material in their database, thereby committing copyright infringement and violating the website's contractual terms and conditions. And the defendants have falsely advertised that their database provides information on the sources of all of the products that McMaster-Carr sells, thereby violating Section 43(a) of the Lanham Act as well as the Illinois Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act.

## **Parties and Jurisdiction**

3. Plaintiff McMaster-Carr is an Illinois corporation with its principal place of business in Elmhurst, Illinois.

4. Defendant McCrady is a citizen and resident of Naples, Florida. McCrady is President and a Director of defendant McCrady Master Reference. He goes by the nickname "Rocker".

5. Defendant McCrady Master Reference is a Florida corporation with its principal place of business in Naples, Florida.

6. The Court has personal jurisdiction over the defendants, because they conduct continuous and systematic business in the State of Illinois, including this district; they have engaged in acts causing injury in the State of Illinois, including this district; and they have otherwise made and established contacts in the State of Illinois, including this district, that are sufficient to permit exercise of personal jurisdiction. The defendants market, offer for sale, sell, ship, provide access to, and/or distribute their database product throughout the United States including, on information and belief, within the State of Illinois and this district, and they operate an interactive website which prominently lists their phone, fax, and email contact

information to solicit, facilitate, and offer their database product to consumers nationwide including to those within the State of Illinois and this district.

7. The Court has subject matter jurisdiction under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332, 1338, and 1367. This action is between citizens of different states and the amount in controversy is in excess of $75,000, exclusive of interest and costs. Venue is proper under 28 U.S.C. §§ 1391(b).

## Factual Background

### McMaster-Carr, its Business, and its Intellectual Property

8. McMaster-Carr is a leading distributor of industrial supply products. McMaster-Carr has been in business since 1901, and sells to customers throughout the country and abroad. As a result of many decades of marketing and sales, as well as the widespread use of its trademarks, McMaster-Carr is extremely well known and favorably regarded as a distributor offering high-quality, reliable products and service.

9. Through its printed catalogs, website, and mobile applications, McMaster-Carr currently sells more than 570,000 different products, which it purchases from thousands of different manufacturers and other suppliers. McMaster-Carr carefully researches and selects its suppliers in order to obtain high-quality, reliable products, many of which are difficult to find from other distributors, for resale. McMaster-Carr stocks most of those products in its own inventory and provides rapid, reliable service, typically shipping an order within eight hours of its receipt. McMaster-Carr's strong reputation derives in large part from the vast size of its inventory of high-quality products and from the excellence of its customer service.

10. McMaster-Carr does not generally disclose the identities of the suppliers of the products that McMaster-Carr distributes, with the exception of certain easily identifiable

branded products (such as WD-40 lubricants). Instead, the identities of the suppliers of the more than 570,000 products offered by McMaster-Carr constitute highly-valuable confidential information which McMaster-Carr goes to considerable efforts to protect. McMaster-Carr's catalogs, website, and mobile applications display and describe the products that McMaster-Carr sells, but (with a tiny number of exceptions) do not identify the source of the products. McMaster-Carr's employees are obligated to treat supplier information as confidential, except in particular circumstances when disclosure of the identity of the supplier of an individual product may be necessary or appropriate. McMaster-Carr requires its suppliers to refrain from disclosing that they are a McMaster-Carr supplier or from disclosing information regarding the products that they supply to McMaster-Carr. McMaster-Carr derives significant value from the identities of its suppliers not being generally known.

11. Upon request from certain customers, McMaster-Carr will disclose the source of individual products that the customer may order, to assist the customer in making its product selection. Such information is not provided to competitors. These occasional disclosures regarding the source of a particular product do not change the fact that, with few exceptions, the identities of the suppliers of the more than 570,000 products sold by McMaster-Carr are protected from public disclosure and are not generally known.

12. In its catalogs, website, and mobile applications, McMaster-Carr organizes and identifies its products by a unique numbering system that customers can use for locating and ordering items. The product numbers are developed and assigned creatively, not through a pre-determined or mechanical process. McMaster-Carr also creates the product descriptions that appear in its catalogs, website, and mobile applications. McMaster-Carr does not license or authorize competitors or others to use its product numbers or its product descriptions.

13. McMaster-Carr owns registered copyrights in its catalogs, website, and mobile applications, including copyrights in product descriptions, product numbers, and other content displayed there. McMaster-Carr's copyright registrations for its website include U.S. Copyright Registration Nos. TX 6-008-500, TX 6-378- 522, TX 6-378-523, TX 6-378-524, TX 6-378-525, TX 6-378-526, TX 6-378-527, TX 6-840- 871, TX 6-840-604, TX 6-839-485, TX 7-547-691, TX 8-131-865, TX 8-332-108, TX 8-387-556, TX 8-570-885, and TX 8-757-381. McMaster-Carr also owns numerous copyright registrations covering its catalogs and mobile applications. The copyright registrations constitute prima facie evidence of the validity of McMaster-Carr's copyrights.

14. McMaster-Carr also protects its intellectual property and product information from unauthorized use and copying through the Terms and Conditions of Use and Sale and the Privacy Policy that are displayed on the McMaster-Carr website (referred to there as the "McMaster-Carr Standard Terms"). (See www.mcmaster.com/termsandconditions, copy attached as Exhibit A.) Among other things, the McMaster-Carr Standard Terms: (i) provide that the McMaster-Carr website, catalogs, and mobile applications may be used only in connection with deciding whether to purchase, and purchasing, products from McMaster-Carr; and (ii) prohibit use of the McMaster-Carr website, catalogs, and mobile applications in any unauthorized manner, including commercial exploitation of content from the website, catalogs and mobile applications, use of such content for commercial purposes, and use of such content in violation of McMaster-Carr's intellectual property rights.

15. The McMaster-Carr Standard Terms constitute an agreement between McMaster-Carr and users of the company's website. Upon accessing McMaster-Carr's website

(www.mcmaster.com), users immediately encounter a prominent notice on the lower right corner of the home page which states:

> By using this website, you agree to our Terms and Conditions and Privacy Policy

This notice is fixed in place on the homepage and immediately visible without any scrolling. The phrase "Terms and Conditions and Privacy Policy" in this notice also is a hyperlink that is highlighted in yellow and underlined when a mouse hovers over. When a user clicks on the link, they are taken to the McMaster-Carr Standard Terms. This notice and link are not in close proximity to any other links on the website pages.

16. This notice and link also appear on each of the website's main Category pages (e.g., Abrading & Polishing, Building & Grounds, Electrical & Lighting), to which users can click through in order to browse and select products in those categories.

17. On nearly all of the other pages on McMaster-Carr's website, including pages that display sub-categories of products and pages that display individual products and product groups, the "Terms and Conditions and Privacy Policy" link appears in the same color and font and in the same position, and it is always visible regardless of scrolling.

18. The McMaster-Carr Standard Terms state explicitly that they constitute an agreement between users of the website and McMaster-Carr with respect to use of the website and purchase of McMaster-Carr's products and that, by using the website and purchasing products from McMaster-Carr, users agree to be bound to the McMaster-Carr Standard Terms.

## The Defendants' Wrongful Conduct

### *The McCrady Master Reference Website and Database*

19. Through a website at www.mccradyreference.com, the defendants sell access to the McCrady Master Reference database. (The defendants' website is referred to below as the

"McCrady Website" and the McCrady Master Reference database is referred to below as the "McCrady Database.") The headline on the McCrady Website claims that the McCrady Database "sources all McMaster-Carr's products." (A printout of the McCrady Website as it appeared on October 29, 2019 is attached as Exhibit B.)

20. On information and belief, the McCrady Database reproduces and displays McMaster-Carr's copyrighted product descriptions and product numbers, and it lists what are purported to be the suppliers of the products that McMaster-Carr sells.

21. On information and belief, a significant portion of the identities of McMaster-Carr's suppliers of the products listed are not accurate.

22. Since McMaster-Carr does not generally disclose the identities of its suppliers, the defendants could not possibly be aware of the source of each of the more than 570,000 products that McMaster-Carr sells, unless they obtained that information through theft, fraud, or other illicit means.

23. Nevertheless, McCrady has been trying for years to profit off of the McCrady Database. Before he started offering the McCrady Database to the public, McCrady contacted McMaster-Carr and threatened to offer the database to McMaster-Carr's competitors in the industrial supply distribution business, as well as to major companies who may be McMaster-Carr customers, unless McMaster-Carr paid him $1.5 million.

*The Defendants' Fraudulent Actions*

24. Defendant McCrady, acting in his individual capacity and on behalf of defendant McCrady Master Reference, has personally placed (or caused others to place) more than 30 telephone calls to McMaster-Carr's customer contact center in the last year, under false pretenses and for the purpose of obtaining information about McMaster-Carr's suppliers.

25. McCrady has contacted McMaster-Carr's customer contact center using at least two phone numbers. One of those phone numbers, 239-597-0386, is listed on the McCrady Website. (See Exhibit B.) According to public records, that phone number is associated with Ann McCrady of Naples, Florida. According to public records, Ann McCrady is the Chief Financial Officer and a Director of defendant McCrady Master Reference.

26. The second phone number from which defendant McCrady made fraudulent phone calls, 239-597-0362, is listed in public records as being associated with Rockwell C. McCrady and Rocker McCrady of Naples, Florida.

27. In these phone calls, McCrady used false names, pretended to be from important McMaster-Carr customers, and asked the McMaster-Carr representatives to identify the sources of certain products sold by McMaster-Carr along with the suppliers' own product numbers.

28. For example, in a call placed on August 16, 2019 from 239-597-0386, McCrady stated that he was "Jim Padulo of Lockheed Martin at Vandenberg Air Force Base." McCrady pretended to be interested in purchasing a Glow-in-The-Dark Threaded-Hole Ball Knob product from McMaster-Carr, and he inquired about the supplier of the product and the supplier's product number. Based on McCrady's misrepresentations, the McMaster-Carr representative provided him with the information that he requested.

29. In another call, placed on August 23, 2019 from 239-597-0386, McCrady stated that he was "Bill Travis of Lockheed Martin at Vandenberg Air Force Base." McCrady pretended to be interested in purchasing a Stainless Steel Threaded Check Valve product from McMaster-Carr, and he inquired about the supplier of the product and the supplier's product number. Based on McCrady's misrepresentations, the McMaster-Carr representative provided him with the information that he requested.

30. And in another example, on September 19, 2019 McCrady placed a call to McMaster-Carr from 239-597-0362 and identified himself as "Greg Morgan from Lockheed Martin at Vandenberg Air Force Base." McCrady pretended to be interested in different models of an industrial tweezer product sold by McMaster-Carr (Product Nos. 2973N1, 2973N2, and 2973N3), and he asked about the supplier of the product and the supplier's product numbers. Based on McCrady's misrepresentations, the McMaster-Carr representative provided him with the information that he requested. McCrady concluded the September 19, 2019 call by stating: "We'll get back when we decide which one we want out of the three."

31. McCrady has placed numerous other similar phone calls to McMaster-Carr, using false names and acting under pretense as if he was from such customers as the Boeing Company, PPG Industries, United Airlines, and Collins Aerospace. In each case he made these calls in order to obtain information about the suppliers of particular products sold by McMaster-Carr.

32. When they received McCrady's fraudulent phone calls, McMaster-Carr's customer contact center employees were not aware, and had no reason to be aware, that the caller was not affiliated with one of McMaster-Carr's valued customers.

33. McMaster-Carr would not have provided any supplier information to McCrady if he had identified himself honestly rather than acting under false pretenses.

### *The Defendants' Unauthorized Access to McMaster-Carr's Website*

34. On information and belief, Defendant McCrady, acting in his individual capacity and on behalf of defendant McCrady Master Reference, has accessed McMaster-Carr's website numerous times, to obtain information without authorization and to reproduce copyrighted material for use in the McCrady Database.

35. On these occasions, McCrady typically has searched up to 30 separate McMaster-Carr product numbers to obtain the information and copyrighted material about those McMaster-Carr products.

36. Since July 2018, McCrady has searched for over 5,000 unique product numbers on McMaster-Carr's website in this fashion, without ordering any of them.

37. On multiple occasions, shortly after he searched McMaster-Carr's website for information on particular products, McCrady then called McMaster-Carr under false pretenses, seeking to obtain supplier information about the products.

38. For example, in the morning of September 19, 2019, McCrady searched McMaster-Carr's website for information on the products identified by Product Numbers 2973N1, 2973N2, and 2973N3. Then at 2:19 p.m. Central Time that afternoon, McCrady made the phone call described in Paragraph 30 above, pretending to be "Greg Morgan from Lockheed Martin at Vandenberg Air Force Base" and asking for supplier information about the very same products.

39. McCrady, who provides the McCrady Website to the public, is aware of how hyperlinks operate on a website. By using the McMaster-Carr website on numerous occasions, McCrady agreed to the McMaster-Carr Standard Terms.

40. McCrady violated the McMaster-Carr Standard Terms by using the McMaster-Carr website without authorization as alleged above.

*The Defendants' False Advertising*

41. The defendants' online advertising for the McCrady Database is false and misleading. Through the headline statement on the McCrady Website that the McCrady Database "sources all McMaster-Carr's products," the defendants' falsely claim to be able to

identify the sources of all products sold by McMaster-Carr. Customers who may purchase products from a supplier identified in the McCrady Database will expect to receive the same product that would actually be furnished by McMaster-Carr if they purchased the part through McMaster-Carr's catalog or its website, but this will not reliably occur.

42. While the McCrady Website contains a disclaimer that its identification of McMaster-Carr's sources is accurate "[i]n most, but not all, cases," that does not dispel or remedy the deceptive nature of the website's primary and more-prominently displayed claim that the McCrady Database identifies the sources of "all McMaster-Carr's products."

43. On information and belief, Defendants have advertised, offered, licensed, or otherwise made the McCrady Database available to hundreds and perhaps thousands of customers and potential customers throughout the United States, including in Illinois and in this District, and including customers of McMaster-Carr.

### The Impact of the Defendants' Wrongful Conduct

44. The defendants' conduct is not authorized by McMaster-Carr, is intentional, and purposefully disregards and wrongfully takes advantage of the rights and property of McMaster-Carr.

45. The defendants' fraudulent actions, their misappropriation of McMaster-Carr's trade secrets, their unauthorized use of McMaster-Carr's website, their infringement of the copyrights in material taken from McMaster-Carr's website, and their false advertising about the McCrady Database damage McMaster-Carr and customers. Among other things, the defendants' activities usurp McMaster-Carr's intellectual property without authorization or compensation; deceive customers, including McMaster-Carr customers, about the nature of the McCrady Database; create a likelihood that customers using the McCrady Database will receive

products of inferior quality or that otherwise are not the same products that customers could purchase from McMaster-Carr; lead customers to believe that McMaster-Carr itself offers goods of lower quality than is actually the case; damage McMaster-Carr's competitive position; and damage McMaster-Carr's relationships with its suppliers and customers.

## COUNT I
## (FRAUD)

46. McMaster-Carr incorporates paragraphs 1 through 45.

47. Defendant McCrady, acting in his individual capacity and on behalf of defendant McCrady Master Reference, made knowingly false representations of fact to McMaster-Carr with the intent to induce McMaster-Carr to rely upon them, in order to obtain information that McMaster-Carr does not disseminate to the general public regarding the identity of McMaster-Carr's suppliers. McCrady knew that these statements were false when he made them.

48. McMaster-Carr reasonably and justifiably relied upon those false representations.

49. These misrepresentations were material to McMaster-Carr in that McMaster-Carr only provides information regarding the suppliers of individual products to certain customers when they request it. McMaster-Carr would not have provided the information obtained by McCrady through his fraudulent phone calls if McMaster-Carr had known that the individual making the calls was McCrady and was not a person calling on behalf of one of McMaster-Carr's valued customers.

50. As a result of McCrady's material misstatements of material fact, McMaster-Carr disclosed to McCrady valuable confidential information regarding the suppliers of certain of its products.

51. McMaster-Carr has been damaged by the defendants' fraudulent and deceitful conduct, including the loss of customer goodwill, competitive position, and future business.

## COUNT II
## (VIOLATION OF THE DEFEND TRADE SECRETS ACT)

52. McMaster-Carr incorporates paragraphs 1 through 51.

53. McMaster-Carr owns trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq., relating to the identities of the suppliers of the products that McMaster-Carr sells. McMaster-Carr's trade secrets are used and intended for use in interstate commerce.

54. McMaster-Carr took reasonable measures to ensure the confidentiality of its trade secrets, including requiring its suppliers to refrain from disclosing that they are a McMaster-Carr supplier or information regarding the products they supply to McMaster-Carr, obligating employees to treat supplier information as confidential, and only disclosing supplier information regarding individual products to certain customers when they request it.

55. McMaster-Carr's trade secrets are extremely valuable to McMaster-Carr, which has expended considerable time, effort, and money to develop and safeguard them. With this information safeguarded from public knowledge, McMaster-Carr is able to compete more effectively for business in the field of the distribution of industrial supplies. Armed with McMaster-Carr's trade secrets, the defendants will be able to compete unfairly with McMaster-Carr for the same business opportunities.

56. The defendants have willfully and maliciously misappropriated McMaster-Carr's trade secret information by acquiring it through improper means and under false pretenses, and by using such trade secret information without McMaster-Carr's consent. The defendants' unauthorized and improper use of McMaster-Carr's trade secrets is ongoing.

57. As a direct and proximate result of the defendants' misappropriation of McMaster-Carr's trade secrets, McMaster-Carr has suffered damage including the loss of

customer goodwill, competitive position, and future business, and the defendants have been unjustly enriched.

58. Unless enjoined, the defendants' activities will continue to cause irreparable damage to McMaster-Carr. McMaster-Carr lacks an adequate remedy at law.

### COUNT III
### (VIOLATION OF THE ILLINOIS TRADE SECRETS ACT)

59. McMaster-Carr incorporates paragraphs 1 through 58.

60. McMaster-Carr's confidential information regarding the suppliers of its products constitutes trade secrets under the Illinois Trade Secrets Act, 765 ILCS 1065/1(d). McMaster-Carr took reasonable measures to ensure the confidentiality of its trade secrets, which derive economic value from not being generally known to other persons who can obtain economic value from their disclosure.

61. The defendants have willfully and maliciously misappropriated McMaster-Carr's trade secret information by acquiring it through improper means and under false pretenses, and by using such trade secret information without McMaster-Carr's consent. The defendants' unauthorized and improper use of McMaster-Carr's trade secrets is ongoing.

62. As a direct and proximate result of the defendants' misappropriation of McMaster-Carr's trade secrets, McMaster-Carr has suffered damage including the loss of customer goodwill, competitive position, and future business, and the defendants have been unjustly enriched.

63. Unless enjoined, the defendants' activities will continue to cause irreparable damage to McMaster-Carr. McMaster-Carr lacks an adequate remedy at law.

## COUNT IV
### (COPYRIGHT INFRINGEMENT)

64. McMaster-Carr incorporates paragraphs 1 through 63.

65. McMaster-Carr's unique product descriptions and product numbers are the subject of valid, registered copyrights.

66. The defendants, without McMaster-Carr's authorization, have copied, distributed, and displayed McMaster-Carr's copyrighted material, and prepared derivative works based on McMaster-Carr's copyrighted material, in violation of the federal Copyright Act, 17 U.S.C. §§ 101 et seq.

67. The defendants committed these acts willfully, with full knowledge of McMaster-Carr's rights.

68. The defendants' activities have caused damage to McMaster-Carr and, unless enjoined, will continue to cause irreparable damage to McMaster-Carr. McMaster-Carr lacks an adequate remedy at law.

## COUNT V
### (BREACH OF CONTRACT)

69. McMaster-Carr incorporates paragraphs 1 through 68.

70. The McMaster-Carr Standard Terms are a valid and enforceable agreement between McMaster-Carr and McCrady, and between McMaster-Carr and McCrady Master Reference.

71. The defendants had reasonable notice of the McMaster-Carr Standard Terms and knew that by using the McMaster-Carr website they were accepting the McMaster-Carr Standard Terms.

72. The conduct described above, including the defendants' unauthorized use of McMaster-Carr's website, the defendants' commercial exploitation of information obtained from McMaster-Carr's website, and the defendants' infringement of McMaster-Carr's intellectual property rights in material copied from the McMaster-Carr website, materially violated the McMaster-Carr Standard Terms without justification or excuse.

73. McMaster-Carr has been damaged by the defendants' breach of contract.

## COUNT VI
### (ILLINOIS DECEPTIVE TRADE PRACTICES ACT AND ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT)

74. McMaster-Carr incorporates paragraphs 1 through 73.

75. The defendants' fraudulent and deceptive acts described above, including their fraudulent acts directed to McMaster-Carr and their false misrepresentations to the public, constitute unfair methods of competition and unfair and deceptive trade and business practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

76. The defendants committed these acts willfully, with intent to defraud McMaster-Carr and to cause confusion, mistake, and deception.

77. The defendants' activities have caused damage to McMaster-Carr and, unless enjoined, will continue to cause irreparable damage to McMaster-Carr. McMaster-Carr lacks an adequate remedy at law.

## COUNT VII
### (VIOLATION OF SECTION 43(a) OF THE LANHAM ACT)

78. McMaster-Carr incorporates paragraphs 1 through 77.

79. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits any "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics [or] qualities . . . of his or her or another person's goods, services, or commercial activities . . . ."

80. The defendants' statements on the McCrady Master Reference Website have misrepresented and currently misrepresent the nature, characteristics, and qualities of the McCrady Database. These actions by the defendants are likely to influence the purchasing decisions of consumers.

81. The defendants committed these acts willfully, with an intent to cause confusion, mistake or deception among the consuming public.

82. The defendants' activities have caused damage to McMaster-Carr and, unless enjoined, will continue to cause irreparable damage to McMaster-Carr. McMaster-Carr lacks an adequate remedy at law.

## COUNT VIII
### (UNJUST ENRICHMENT)

83. McMaster-Carr incorporates paragraphs 1 through 82.

84. The defendants have benefited from their wrongful and unauthorized use of McMaster-Carr's confidential and trade secret information, their unauthorized use of information and material taken without authorization from McMaster-Carr's website, and their usurpation of McMaster-Carr's reputation, goodwill, and intellectual property rights. The defendants have not paid any compensation to McMaster-Carr in return for those benefits.

85. The defendants' retention of those benefits violates the fundamental principles of justice, equity, and good conscience.

86. The defendants' failure to compensate McMaster-Carr constitutes unjust enrichment and has damaged McMaster-Carr.

## PRAYER FOR RELIEF

McMaster-Carr requests the following relief:

A. Preliminary and permanent injunctions prohibiting the defendants, their officers, agents, servants, employees, and attorneys, and anyone in active concert or participation with them, from: (i) continuing to offer, sell, or otherwise provide access to the McCrady Database and any information contained in it that relates or purports to relate to products that McMaster-Carr distributes; and (ii) any other continued acts of fraud, trade secret misappropriation, copyright infringement, breach of contract, false advertising, deceptive trade and business practices, and other violations of federal and state law as alleged in this complaint;

B. An award of all damages suffered by McMaster-Carr as a result of the defendants' illegal conduct;

C. In the alternative for the defendants' copyright infringement, an award of statutory damages under 17 U.S.C. § 504(c);

D. An award of the defendants' profits and gains derived from their unlawful acts;

E. An award of punitive and exemplary damages as authorized under the federal and state laws cited in this complaint;

F. An order requiring the defendants to reimbursement McMaster-Carr for its costs and reasonable attorneys' fees incurred in this action; and

G.      Such other relief as the Court deems just and proper.

Dated: November 1, 2019          /s/ Thomas White
                                            Thomas White (ARDC #6202967)
                                            Sailesh Patel (ARDC # 6270406)
                                            Chad Watson (ARDC # 6330608)
                                            Schiff Hardin LLP
                                            233 S. Wacker Drive Suite 7100
                                            Chicago, Illinois 60606 (312) 258-5500
                                            twhite@schiffhardin.com
                                            spatel@schiffhardin.com
                                            cwatson@schiffhardin.com


                                            Christine Feller
                                            Schiff Hardin LLP
                                            666 Fifth Avenue
                                            Suite 1700
                                            New York, NY 10103
                                            (212) 753-5000
                                            cfeller@schiffhardin.com

                                            Counsel for Plaintiff McMaster-Carr
                                            Supply Company